UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STANLEY JOSEPH, LAJUAN WILLIAMS, ET AL. | CIVIL ACTION |
| VERSUS | NO: 07-9763 |
| WAYNE L. JONES, ET AL. | SECTION: "C" (5) |

**ORDER AND REASONS[1]**

This matter is before the Court on the issue of whether summary judgment should be granted to Defendant as a matter of law. Having reviewed the record, memoranda of counsel, and the law, the Court partially GRANTS and partially DENIES Defendant's Motion for Summary Judgment (Rec. Doc. 39) for the following reasons.

I.  FACTUAL BACKGROUND

Plaintiffs in this matter have asserted violations under 42 U.S.C. § 1983 relating to their allegedly unconstitutional detentions by the St. John the Baptist Parish Sheriff's Office and have filed a complaint against Sheriff Wayne L. Jones in his official capacity. Rec. Doc. 45 at 1. Specifically, each plaintiff asserts a violation to his due process rights under the Fourteenth Amendment of the U.S. Constitution and Article 1 of the Louisiana Constitution. *Id.*

*1. Plaintiff Stanley Joseph*

St. John the Baptist Parish Deputies responded to a burglary in progress in Garyville,

---

[1]Francisco A. Besosa-Martinez, a third-year student at Tulane University Law School, assisted in the research and preparation of this opinion.

Louisiana on May 4, 2006. Rec. Doc. 39-2 at 3. Fred Defrancesh told the officers who arrived at the scene that the rear door of his residence had been kicked open. *Id.* When conducting a perimeter search of the residence, officers spotted a black male hiding behind a shed in the rear of the residence. *Id.* A deputy identified this individual as Stanley Joseph. *Id.* After Joseph fled the scene to avoid arrest, Crime Scene Technicians discovered finger prints on a window of the home. *Id.* These finger prints were compared to those of Joseph, which were on record with the St. John the Baptist Sheriff's Office and the Louisiana State Police Crime Lab. *Id.* Both agencies determined that the finger prints were a match. *Id.* Police then obtained a Judicial Arrest Warrant on May 11, 2006, Rec. Doc. 39-4 at 17, and arrested Joseph on May 20, 2006 on charges of Simple Burglary of an Immovable Structure (La. R.S. 14:62.2) and Contempt of Court. Rec. Doc. 39-2 at 4.

After being incarcerated for these charges, Joseph's bond was set by Judge Robert Lombrano in an Order signed on October 26, 2007 and stating that Joseph should be released on $20,000 bond to be satisfied by a personal surety bond executed by his mother. Rec. Doc. 45-3 at 31. Plaintiffs assert that this Order was sent to the St. John the Baptist Sheriff's Office by October 30, 2007. Rec. Doc. 45 at 2. Defendant, on the other hand, presents a facsimile of the Order sent to the Sheriff's Office on November 2, 2007. Rec. Doc. 39-4 at 20. Joseph was released on bond on November 2, 2007. Rec. Doc. 39-2 at 4.

2. *Plaintiff Lajuan Williams*

On February 6, 2007, St. John the Baptist Parish Deputies were dispatched to Reserve,

Louisiana upon receiving a complaint concerning a male subject pouring gasoline around a FEMA trailer and attempting to ignite it. Rec. Doc. 39-2 at 2. Two witnesses provided statements identifying Lajuan Williams as the culprit. *Id.* Once deputies informed Williams that he was going to be placed under arrest, Williams proceeded to flee and resisted arrest. Rec. Doc. 39-2 at 2. When subsequently captured by deputies, Williams was arrested and charged with Disturbing the Peace (La. R.S. 14:103(A)(2)), Resisting an Officer (La. R.S. 14:108(B)(1)(b)), and Attempted Aggravated Arson of an Inhabited Dwelling (La. R.S. 14:51). *Id.* Officers filled out an "Affidavit of Probable Cause," as required by La. C.Cr.P. Art 230.2(A). Rec. Doc. 45-3 at 1. This document was subsequently signed by a judge the following day (February 7, 2007). *Id.* at 2. Williams was incarcerated for approximately eight days and released on bond on February 14, 2007. Rec. Doc. 39-2 at 2 Subsequently, Williams pled guilty to an amended charge of Criminal Mischief (La. R.S. 14:59), was given a suspended sentence of sixty days in jail, fined, and placed on probation. Rec. Doc. 45 at 2.

## II.   LEGAL STANDARD AND ANALYSIS

*1.   Applicable Law*

*a. Summary Judgment Standard*

Summary Judgment is appropriate if the record, including the pleadings, admissions, and answers to interrogatories demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56; *Ragas v.*

*Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Thus, "[t]he court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir. 2001). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Evans v. City of Marlon, Texas*, 986 F.2d 104, 107 (5th Cir. 1993); *citing Reid v. State Farm Mutual Automobile Insurance Company*, 784 F.2d 577, 578 (5th Cir. 1996); *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 US. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Boeing Company v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969)(*en banc*).

The moving party has the ultimate burden of demonstrating to the court that the pleading, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate the nonexistence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-movant must provide specific facts leading to the conclusion that there is a genuine issue for trial. *Ragas,* 136 F.3d at 458. "…[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 248-249.

*b. 42 U.S.C. § 1983*

To successfully prove a claim under § 1983, a plaintiff is required to show that "the conduct complained of was committed by a person acting under color of state law and . . . [that] this conduct deprived a person of rights, privileges or immunities secured by the constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Specifically, § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The test for determining whether someone is acting under "color of law" is virtually identical to evaluating whether there is state action. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *States v. Price*, 383 U.S. 787, 764 n.7 (1966); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) ("[I]t is clear that in a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical.").

In regards to municipal actors, the Supreme Court initially held that municipalities were not persons for purposes of § 1983 and, thus, prevented municipal liability under § 1983. *See Monroe v. Pape*, 365 U.S. 167 (1961). This limitation on municipality liability, however, has been expressly overruled. *See Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). While a municipality cannot

be held liable for the wrongful acts of others, liability is not precluded in instances where the municipality itself violates the Fourteenth Amendment. *Id.* at 683. Thus, municipal governments may be sued for their own unconstitutional or illegal policies and not for the individual acts of their employees. *Id.* at 691 ("[T]he language of § 1983. . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

Under §1983, "official capacity" suits are viable against persons responsible for formulating an official policy which results in a constitutional deprivation. To establish liability against a government official in his/her "official capacity," a §1983 plaintiff must show that a policy or custom formulated and implemented by the official "must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21 (1991); *Kentucky v. Graham*, 473 U.S. 159 (1985); *Monell*, 436 U.S. 658.

### c. Probable Cause to Arrest

To determine whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest and decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation; and, in all cases of seizure, has a fixed and well known meaning. It imports a seizure made under circumstances which warrant suspicion." *Locke v. United States*, 7

Cranch 339, 348 (1813). As correctly stated by Defendant in its Motion for Summary Judgment, "[p]robable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe the offense has been committed by the person arrested." Rec. Doc. 39-2 at 9 (*citing Passman v. Blackburn*, 652 F.2d 559 (5th Cir. 1991); *United States. v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1996); *United States v. Woolery*, 670 F.2d 513, 515 (5th Cir. 1982), *cert. denied*, 459 U.S. 835 (1982)). Although "the question of probable cause in a section 1983 damage suit is one for the jury," *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998), "probable cause [may] exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and a district court may enter summary judgment accordingly. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Moreover, "persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 155 fn. 3 (2004) (*citing County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991)).

>	*d. Affidavit*

Under Louisiana law:

> [a] law enforcement officer effecting the arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest.

La. C.Cr.P. Art. 230.2(A). An "affidavit" is "[a] voluntary declaration of facts written down and

sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." *Black's Law Dictionary* 62 (8th ed. 2004). Thus, an unsworn affidavit is considered deficient and not taken into consideration by the court. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.").

There is a statutory exception, however, that permits "the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits." *Carter v. Clark*, 616 F.2d 228, 230 (5th Cir. 1980)(*quoting* H.R. Rep. No. 94-1616, 94th Cong., 2d Sess. 1, reprinted in (1976) U.S. Code Cong. & Admin. News, pp.5644, 5644). Under 28 U.S.C. § 1746, all matters that are permitted to be supported, evidenced, established or proven by affidavit "may, with like force and effect, be supported, evidenced, established, or proved by [an] unsworn declaration" as long as the affiant subscribes to the statement under penalty of perjury. If the declaration is made outside the United States, the affiant may do this by stating: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." 28 U.S.C. § 1746(1). Furthermore, the language of the statute is very inclusive and the only exceptions are that "unsworn written declaration(s) given under penalty of perjury may not be substituted for (1) deposition(s), (2) an oath of office, or (3) a document required to be signed before a specified official other than a notary." *Carter*, 616 F.2d at 230 (*quoting* H.R. Rep. No. 94-1616 at 2., reprinted at (1976) U.S. Code cong. & Admin. News, p. 5645). Whether or not this opens the judicial process to some abuse is not for the courts to decide; the court "must only determine what Congress says the

law is." *Carter*, 616 F.2d at 231.

Furthermore, when confronted with situations where relevant or exculpatory information has been left out of an affidavit, the U.S. Court of Appeals for the Second Circuit has established what has come to be known as the "corrected affidavit test." *See Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004). Under this test, the Court must "look to the hypothetical *contents* of a 'corrected' application to determine whether a proper warrant application, based on existing *facts* known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *Escalera*, 361 F.3d at 743-44 (emphasis added).

*e. Prolonged Detention - Due Process Violation*

When arresting an individual without a warrant, the issues to be examined sometimes do not end with whether the arrest itself was lawful. "Liberty," as understood under the Due Process Clause, means freedom from physical restraint. *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972). Thus, there are occasions when the length of the detention immediately after the arrest must be scrutinized. Only a very important government interest can justify deprivation of liberty in this sense. This principle underlies numerous decisions by the Supreme Court involving various constitutional provisions as they relate to pretrial detention. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Court relied in part on the severity of "[t]he consequences of prolonged detention" in construing the Fourth Amendment to forbid pretrial incarceration of a suspect for an extended period of time without "a judicial determination of probable cause." Similarly, in *Stack v. Boyle*, 342 U.S. 1, 4-5 (1951), the Supreme Court emphasized

the importance of a person's right to freedom until proven guilty in construing that the Eight Amendment proscribed the setting of bail "at a figure higher than an amount reasonably calculated to" assure the presence of the accused at trial. *Cf. Baker v. McCollan*, 443 U.S. 137, 149-50 (1979) (Stevens, J., dissenting).

*f. Class Action*

Before any case can be certified as a class action under the Federal Rules of Civil Procedure, four requirements must be established: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a). Furthermore, the proposed class must meet one of the three sub-parts of Rule 23(b), which provides that a class action can be brought if, in addition to Rule 23(a), it is proven that:

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the

> controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. Pro. 23(b). Furthermore, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981). The Fifth Circuit has held that "a district court must rigorously analyze Rule 23's prerequisites before certifying a class." *Spence v. Glock*, 227 F.3d 308, 310 (5th Cir. 2000). The party seeking classification bears the burden of proving that they have met the requirements of Rule 23. *See Castanato v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Moreover, under Rule 23.1(B) of the Eastern District of Louisiana Local Rules, the party seeking classification as a class must move to do so "[w]ithin 91 days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing[.]" EDLA Local Rule 23.1(B) (as amended December 1, 2009).

*2.     Analysis*

First, the Court recognizes that Defendant is not entitled to qualified immunity in this instance because the Complaint does not sue him in his personal capacity; it brings claims against him exclusively in his official capacity. Rec Doc. 1 at 2 ("Made defendants herein are, *in his official capacity*, Wayne L. Jones, Sheriff of St. John the Baptist Parish[.]").

The Court concludes that summary judgment would be inappropriate because there are still genuine issues of material fact in regards to whether there was a policy that violated the

11

constitutional rights of Plaintiffs in this instance. Plaintiffs have suggested that the St. John the Baptist Sheriff's Office has made it "standard procedure" to make warrantless arrests by filling out affidavits of probable cause in the absence of an officer authorized to administer oaths. Rec. Doc. 45 at 7; Rec. Doc. 45-3 at 1-4. Defendant refutes this allegation by saying that "there are no facts to support a finding that the Sheriff established a policy for his office that directed or allowed his officers to subvert the affidavit process in making arrests or presenting probable cause to a magistrate or judge." Rec. Doc. 39-2 at 8. Plaintiffs, however, cite a previous state court proceeding where a St. John the Baptist official stated that it was "not policy within the Sheriff's Office" to sign these affidavits of probable cause before a Justice of the Peace.

Defendant argues that Plaintiffs' contention, which attacks the "formalities" of the affidavit requirement rather than its substance, is insufficient to make out a constitutional violation, and, absent a violation, no official capacity claim will lie, even if the actions complained of were undertaken pursuant to some official policy of the Sheriff. However, the law is quite clear that an unsworn affidavit is considered deficient and shall not be taken into consideration by the court. *See Kline*, 845 F.2d at 1306. The law is also clear that unsworn statements will only carry the same weight as an affidavit if it meets certain criteria. *See Carter*, 616 F.2d at 230; 28 U.S.C. § 1746. The "Affidavit of Probable Cause" in this instance does not meet this criteria because it does not incorporate the language required under statute for it to receive the same treatment as a duly sworn affidavit. *See* 28 U.S.C. § 1746 (stating that any matter that can be supported or evidenced by sworn declaration may also be supported or evidenced through an unsworn declaration if such written

testimony is accompanied with the following statement: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.")

Furthermore, Defendant's assertion that the arrests in these instances would have been lawful even if they were considered warrantless arrests misses the substantial issue raised in this case. Plaintiffs have not raised the issue of false arrest. Rec. Doc. 45 at 10. The complaint in this instance concerns the prolonged detention they were subjected to afterwards. As Supreme Court precedent makes clear, such pretrial incarceration is forbidden under the Fourth Amendment without "a judicial determination of probable cause." *Gerstein*, 420 U.S. 103.

Moreover, Defendant's reliance on the Second Circuit's "corrected affidavits doctrine" in *Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004), is erroneous. The Second Circuit made it abundantly clear in *Escalera* that the purpose of the "corrected affidavits doctrine" is to "look to the hypothetical *contents* of a 'corrected' application to determine whether a proper warrant application, based on existing *facts* known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *Escalera*, 361 F.3d at 743-44 (emphasis added). Thus, the doctrine's aim is "to allow for the accuracy or completeness of properly sworn facts to be rehabilitated" Rec. Doc. 45 at 10, and not serve as a substitute for the most fundamental aspect of an affidavit: that it be signed in front of an duly authorized official.

The statement by the officer in the previous state court proceeding, coupled with the fact that such a practice (filling out an affidavit of probable cause without an officer authorized to administer an oath present) took place on at least two other occasions, Rec. Doc. 45-3 at 1-4, and that the

"Affidavit of Probable Cause" used by officers does not comply with the alternative statutory requirements, *see Carter*, 616 F.2d at 230, could reasonably lead a jury to conclude that the Sheriff's Office had a policy that did not require its officers to complete an affidavit of probable cause as required by law. Such a policy has yet to be proven, but, under the facts of this case, it would not be unreasonable to believe that a jury, after examining the evidence presented in a trial, could conclude that such a policy existed. As such, Defendant's motion as to these claims is denied.

Finally, Defendant's motion for summary judgment on the class action claim is GRANTED. The law states that this Court must "rigorously analyze Rule 23's prerequisites before certifying a class[,]" *Spence*, 227 F.3d at 310, and that the burden of proving these requirements lies with the party seeking classification. *Castanato*, 84 F.3d at 740. Moreover, the Local Rules make clear that, in order for a class to be certified, the party seeking class certification must move for certification under Rule 23(c)(1) of the Federal Rules of Civil Procedure within 91 days after the filing of the complaint. Plaintiffs did not move for certification within that time limit, and the only evidence before the Court supporting their class action claim is an officer's admission, in an unrelated case, that it was not department policy to sign "Affidavits of Probable Cause" in front of an authorized official. As such, Defendant's motion is GRANTED in part and Plaintiffs' class action demand is stricken

### III. CONCLUSION

Accordingly,

The Defendant's Motion for Summary Judgment (Rec. Doc. 39) is hereby GRANTED as to Plaintiffs' class action demand and DENIED as to the remainder.

New Orleans, Louisiana, this 11th day of March, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**